# DITTRICH, *Appellant,*

*v.*

# PACIFIC NORTHWEST BELL,
*Respondent—Cross-Appellant.*

(No. 419-325, CA 5592)

550 P2d 1245

*Paul J. O'Hollaren,* Portland, argued the cause and filed the brief for appellant.

*Chris L. Mullmann,* Portland, argued the cause and filed the brief for respondent—cross-appellant.

Before Schwab, Chief Judge, and Langtry and Lee, Judges.

LEE, J.

**LEE, J.**

In this workmen's compensation case, claimant's award of permanent partial disability (PPD) was increased by the referee from 5 percent to 20 percent of the maximum for an unscheduled upper back injury. The Board affirmed. The circuit court affirmed the award for permanent partial disability and added an award for temporary total disability for the period of March 1, 1974 to October 11, 1974. Both parties appeal.

Claimant worked as an installer of complex telephone equipment. On January 28, 1972, at age 44, he was injured on the job when he lost his balance while stepping over some insulation on the floor. Claimant said he felt pain "across the middle of the back, just about the center or a little below my shoulder blades, and then in my right shoulder." Claimant testified that the pain increased during the night and he contacted Dr. McComb (who had treated claimant's children) the next morning. Dr. McComb diagnosed claimant's condition as a muscle strain of the right shoulder.

Two days later claimant was seen by Dr. Voth, the employer's house doctor. Dr. Voth diagnosed claimant's condition as "MUSCLE STRAIN RIGHT SCAPULA" and he advised claimant to avoid extremes of right shoulder motion and driving but authorized bench work. The following day, February 1, claimant returned to work and was assigned to a less strenuous job but soon returned to substantially his former kind of work and his condition became aggravated. Claimant then accepted a less physically strenuous position as a "walking repairman."

On March 15, 1972 Dr. Voth stated that (1) claimant could return to his regular work in 2-3 weeks, (2) no permanent impairment would result from the injury, and (3) the claimant's condition was not medically stationary.

In April 1972 claimant experienced an aggravation

of his back condition while throwing some dirt to create a drain at a house he had purchased. In a letter dated July 28, 1973 Dr. McComb stated:

"\* \* \* \* \*

"\* \* \* At the end of April [1972], he [claimant] called stating that he had been digging and was having pain in the lower and mid back. On May 11, he related that he had had some pain in the right posterior shoulder area and missed two days of work. It improved with Valium and hot, wet soaks. He was again checked on June 8, 1972, and stated that he had developed low and mid backaches which began in April when he started building his own house. He stated that his regular job didn't bother him except when he was wiring over his head. He stops fifteen or twenty minutes and the pain goes away. His shoulder was doing quite well at that time.

"Mr. Dittrich was last seen July 7, 1973. His shoulder examination was normal and he was discharged at that time as far as his State Industrial Claim. He was advised that he do exercises to relieve his low backache. I did not feel that the low back problem was related to his initial job injury. He did call on July 31, 1972, stating that he had been working on a roof and pulled the muscles and was having pain in his shoulder. \* \* \*

"\* \* \* \* \*."

In reports on March 20, April 27, June 16, and July 10, 1972, Dr. McComb stated that claimant's injury would result in no permanent impairment. Dr. McComb, in his July 10, 1972 report, stated that claimant's condition was medically stationary (he had released claimant for regular work as of March 31, 1972). Thereafter claimant saw doctors intermittently and was on and off the job until September 4, 1974.

On December 7, 1972 claimant consulted Dr. Robert Rankin. In a report dated December 8, 1972 Dr. Rankin stated that claimant had a "chronic upper back fatigue syndrome." Dr. Rankin advised claimant to return to work.

In a report dated August 29, 1973, Dr. Voth stated that he had talked with Dr. Rankin on August 28, 1973 and that Dr. Rankin "felt that the employee-

claimant should be considered disabled for work through August 31, 1973."

In a report dated September 6, 1974, Dr. Voth stated that he had talked to Dr. Rankin who indicated that he had seen the claimant on August 31 and advised claimant then that he could return to work on September 4. Claimant did not return to work on September 4 and did not work thereafter.

Claimant was also examined by Dr. Daniel Halferty of the Medical Division of the Disability Prevention Division of the Workmen's Compensation Board whose report of November 5, 1973 stated that claimant's "Injury related condition" was a "Chronic strain right thoracic and paraspinal area."

Thereafter, claimant was examined by Dr. Paul Campbell of the Portland Orthopedic Clinic who said:

"* * * * *

"* * * It can be concluded that this patient is having continuing upper low back symptomatology for a period of about two years initiated by an injury on January 28, 1972. This chronic mid-back sprain is most likely due to soreness of the muscles in this area initiated by irritability at the lumbosacral portion of the spine. It is my opinion that if the patient is able to follow the conservation treatment program closely his symptoms should be satisfactorily controlled if he is able to avoid heavy activities and faulty posture in the future. * * *"

Claimant was again seen by Dr. Campbell on May 10, June 18, August 28, and October 11, 1974. In a further report dated October 14, 1974, Dr. Campbell stated:

"* * * It is recommended that his claim be closed and that the patient seek a lighter type of work that he might be able to carry forward without aggravating his continuing chronic lumbosacral sprain."

On October 29 and 30, 1974, the claimant was examined by Dr. Norman W. Hickman, a clinical psychologist, who reported that

"* * * the patient has a superior understanding of

mechanical principles and certainly should be able to learn almost any type of mechanical work.

"On the Purdue Mechanical Adaptability Test this patient did as well as 99% of Oregon's industrially injured workers, as well as 97% of industrially [sic] applicants, as well as 98% of non-supervisory employees, and as well as 95% of supervisors. This patient certainly possesses a superior amount of practical information of a mechanical and electrical nature.

"* * * * *"

Dr. Hickman's report of claimant's prognosis was as follows:

"* * * The prognosis for restoration and rehabilitation in this instance is good as far as psychological factors are concerned. This man has average intellectual resources, he has a high school education, he has some good personality resources, and some very excellent aptitudes. With appropriate assistance in his rehabilitation effort he will return to full-time gainful employment."

The evidence we have reviewed reveals that the claimant does have some physical impairment which effects the kind of work he can do. Howbeit, claimant does have good aptitude for mechanical work and is physically able to work. Based on the medical evidence, we find that claimant's physical impairment is in the slight to moderate range. We also find that claimant's motivation to work is very weak.

Translating our evaluation of claimant's permanent disability into a percentage, we come to the same conclusion as the referee—20 percent (64 degrees). We find that claimant was not temporarily totally disabled from March 1, 1974 to October 11, 1974.

The findings and conclusions of the referee and the Board are hereby reinstated.

Reversed.